# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1236

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Chane Phillip Christenson, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 13, 2011
Filed: September 2, 2011

_____

Before COLLOTON, CLEVENGER,[1] and BENTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Chane Christenson pleaded guilty to a single count of knowingly and willfully threatening to take the life of the President of the United States, in violation of 18 U.S.C. § 871(a). The district court[2] sentenced Christenson to three years' probation.

_____

[1]The Honorable Raymond C. Clevenger, III, United States Circuit Judge for the Federal Circuit, sitting by designation.

[2]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

Christenson appeals, arguing that there was not a sufficient factual basis for his guilty plea. We affirm.

On the afternoon of December 9, 2009, Christenson sent the following e-mail, which we reproduce verbatim, through the White House website:

i guess obama was right "god damn the usa" i vote mass impeach every last mother fucking one of you for treason. i would kill obama if i could. i will go to jail before 1 dollar of mine goes for an abortion! illegal aliens shold be deported just like you obama you false birth record commie piece of shit. i hope some 1 kills you and stacks your head on a stick to warn any god damn commie that comes after. if you have more votes then voters someone LIED. impeach, deport or kill i do not care any more i hate my country i hate the un i hate acorn i hate mrs obama, i hate libs, i will not pay any more taxes nor will i call my self an american. if everyone can come in and no one can leave it's a jail, berry sertero needs to have his head removed please kill him like you guys did JFK. hi hoe i hoe its off to jail i go for it the only way to stay alive in this fucked up country of mine. i used to praze the beauty of grey now it all KKK fuck you fuck you i want the with house to burn mass impeach you god damn treasonest mother fuckers. merry CHRISTmas you commie fucks! i would of died for my country now id sell it even fast then you. i do not trust anyone that pays mils. to get a job that pays thou. please come and aresst me so i can go to court and say "i can say kill obama cuz that not even his real name'. forget the false birth record i want a blood teast and some dna.My country is evil just look at the hole "god damn" crew and now with YOUR healthcare abortion WE all must buy into. MASS IMPEACH on treason. I HATE MY COUNTRY I HATE YOU ALL you like you pay others to lie fuck you and your actors you god damn pieces of shit i want to see obama's blood spilled all over the white house make it pink. GOD DAMN THE USA

At approximately 3:00 a.m. on January 6, 2010, Christenson sent another e-mail through the White House website. This e-mail read:

WHATS SO HARD ABOUT A BIRTH RECORD? ONLY NON AMERICAN S STILL TRUST YOU. YOU ARE A CROOK A FEAR MONGEL I HATE YOU AND I HOPE SOMEONE KILLS YOU AND YOUR FAMILY REAL SOON. TO WARN THE NEXT ILLEGAL ALIEN WHO TRIES TO TAKE YOUR PLACE. I WASNT RACISET UNTILL 2008 THANKS NIGGERS! WHITE PEOPLE CAN BE NIGGERS TOO! kill obama MRS OBAMA AND THE 2 LITTLE NIGGER BRAT KIDS!

An investigation traced the e-mails to Christenson, who was interviewed by two Secret Service agents at his residence on February 1, 2010. Christenson admitted that he sent the e-mails, but told the agents that he believed that he was under the influence of alcohol and marijuana at the time. He also stated that he believed that President Obama's real name is "Berry Sertero." Christenson explained to the agents that he had no interest in killing the President and that he is actually a peaceful person.

In April 2010, a grand jury indicted Christenson on two counts of threatening to take the life of the President, in violation of 18 U.S.C. § 871(a). The first count of the indictment pertained to the December 2009 e-mail; the second count arose from the January 2010 e-mail. On June 30, 2010, Christenson entered a plea agreement in which he agreed to plead guilty to the second count of the indictment in exchange for the government's agreement to make a favorable sentencing recommendation. Under the heading "FACTUAL BASIS," the plea agreement stated that Christenson had sent the e-mails and had knowingly and willfully threatened to take the President's life. At a hearing on the same day, Christenson confirmed that he sent the two e-mails, and the district court concluded that there was a proper factual basis for the plea and accepted the plea.

Shortly before the sentencing hearing scheduled for December 2010, Christenson retained new counsel and filed a motion to withdraw his guilty plea. Christenson asserted that a mental health evaluation conducted after the plea hearing

indicated that he was likely suffering from a delusional disorder, a paranoid personality disorder, and alcohol and cannabis dependence. He argued that further testing was needed to determine whether his plea was knowing and voluntary. Christenson also contended that he should be allowed to withdraw his plea because the e-mails contained mere political hyperbole rather than true threats, and were therefore protected by the First Amendment.

The court convened a hearing, during which the court informed Christenson that it had been inclined to follow the plea agreement's recommendation that no term of imprisonment be imposed. After learning of the court's intention about sentencing, Christenson withdrew the motion to withdraw the plea. The district court proceeded with sentencing, imposed a three-year term of probation, and dismissed the first count of the indictment on the motion of the United States.

At the outset, we must determine whether we can review Christenson's claim that there was an inadequate factual basis for his guilty plea, and, if so, what standard of review should apply. This court has held that a valid, unconditional plea of guilty is an admission of guilt that waives all non-jurisdictional defects and defenses. *United States v. Limley*, 510 F.3d 825, 827 (8th Cir. 2007). In *United States v. Frook*, 616 F.3d 773, 775 (8th Cir. 2010), however, we held that a defendant who entered an unconditional guilty plea could challenge on appeal a district court's failure to comply with Federal Rule of Criminal Procedure 11(b)(3). That provision states that "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." As this court noted in *Frook*, "[i]f a district court accepts a guilty plea based on a set of facts that plainly and obviously does not constitute a federal offense, but nonetheless determines pursuant to Rule 11(b)(3) that the defendant's conduct did violate federal law, then there has been a violation of the Rule 11 scheme designed to ensure a knowing and voluntary plea." *Id.* Such a claim may be reviewed for plain error on direct appeal when the defendant failed to challenge the adequacy of the factual basis before the district court. *Id.*

The government argues that Christenson's claim is unreviewable, citing cases suggesting that a defendant who pleads guilty unconditionally cannot raise an as-applied constitutional challenge to the statute of conviction on direct appeal. *See United States v. Jacobson*, 406 F. App'x 91, 92 (8th Cir. 2011) (per curiam); *United States v. Seay*, 620 F.3d 919, 922 n.3 (8th Cir. 2010). Christenson, however, does not challenge his conviction on the basis that § 871(a) is unconstitutional as applied to him. He argues only that there was not a sufficient factual basis for the guilty plea, as required by Rule 11(b)(3). Such a claim is reviewable on direct appeal. *Frook*, 616 F.3d at 775.

Christenson contends that our standard of review should be *de novo*, because his argument implicates the First Amendment. First Amendment considerations are present, *see United States v. Frederickson*, 601 F.2d 1358, 1363 (8th Cir. 1979), but an appellant cannot escape the consequences of a forfeiture in the district court by grounding his argument on the First Amendment. As the Supreme Court noted in *United States v. Olano*, 507 U.S. 725 (1993), "[n]o procedural principle is more familiar to this Court than that a constitutional right, or a right of any other sort, may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." *Id.* at 731 (internal quotation omitted). This court has repeatedly reviewed forfeited First Amendment claims for plain error. *See, e.g.*, *United States v. Wolk*, 337 F.3d 997, 1003-04 (8th Cir. 2003); *United States v. Bausch*, 140 F.3d 739, 741 (8th Cir. 1998). Christenson cites *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485 (1984), and *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557 (1995), for the proposition that *de novo* review is required, but neither of those cases involved any issue of forfeiture, and they do not control the standard of review in this case. While Christenson can challenge the existence of a factual basis supporting his plea, we review that challenge only for plain error given Christenson's failure to raise the argument before the district court. *See Frook*, 616 F.3d at 775.

To qualify for relief under the plain-error standard of review, an appellant must show that the district court committed an error that is clear or obvious under current law and that the error affected the appellant's substantial rights. Fed. R. Crim. P. 52(b); *see Olano*, 507 U.S. at 732, 734. If the appellant makes this showing, an appellate court "has the *discretion* to remedy the error – discretion which ought to be exercised only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Puckett v. United States*, 129 S. Ct. 1423, 1429 (2009) (alteration in original) (internal quotation omitted).

Our review of the factual basis for a guilty plea is limited. We ask only whether there was sufficient evidence before the district court "upon which a court may reasonably determine that the defendant likely committed the offense." *See United States v. Cheney*, 571 F.3d 764, 769 (8th Cir. 2009) (internal quotation omitted). "We have held that facts gathered from the prosecutor's summarization of the plea agreement and the language of the plea agreement itself, a colloquy between the defendant and the district court, and the stipulated facts before the district court are sufficient to find a factual basis for a guilty plea." *United States v. Orozco-Osbaldo*, 615 F.3d 955, 958 (8th Cir. 2010) (internal quotation omitted). We may also consider facts set forth in the presentence report to determine whether there was a sufficient factual basis for the plea. *See Orozco-Osbaldo*, 615 F.3d at 958; *United States v. Brown*, 331 F.3d 591, 595 (8th Cir. 2003); *cf. Howard v. United States*, 135 F.3d 506, 509-10 (7th Cir. 1998).

A violation of § 871(a) involves both an objective and a subjective component. The government must establish that a reasonable recipient, familiar with the context of the communication at issue, would interpret it as a threat, and that the defendant appreciated the threatening nature of his statement and intended at least to convey the impression that the threat was a serious one. *United States v. Cvijanovich*, 556 F.3d 857, 863 (8th Cir. 2009). The circumstances surrounding the statement at issue are

relevant to the determination whether each component has been satisfied. *See id.*; *United States v. Whitfield*, 31 F.3d 747, 749 (8th Cir. 1994).

Here, Christenson stipulated in the plea agreement that he sent an e-mail to the White House website in which he stated, among other things, "kill obama MRS OBAMA AND THE 2 LITTLE NIGGER BRAT KIDS!" He further stipulated that he knowingly and willfully threatened to take the life of the President, that he acted voluntarily, and that he knew that his actions were illegal. Christenson admitted in the plea agreement and at the plea hearing that he had previously sent an e-mail to the White House website containing similar threats to take the life of the President. In the earlier e-mail, Christenson wrote that "i would kill obama if i could" and that "i want to see obama's blood spilled all over the white house make it pink." This evidence was not so deficient that it obviously could not be the basis for a reasonable determination that Christenson likely violated § 871(a). *See United States v. Mann*, No. 99-4115, 2000 WL 372243, at *1 (8th Cir. 2000) (holding that sufficient evidence supported the defendant's conviction where the defendant mailed a letter to the President stating that "You . . . should live no longer" and "Someday . . . you will pay for your improper actions with your life," and also indicating that "change" was needed, "[b]y force if need be, . . . as we become your worst dream"); *see also United States v. Koski*, 424 F.3d 812, 820 (8th Cir. 2005); *United States v. Whitfield*, 31 F.3d 747, 749 (8th Cir. 1994).

Christenson argues that he simply expressed a wish that the President suffer harm, rather than a declaration of his own intent to cause harm to the President. Christenson points out that his e-mails referenced "hot-button political topics" and that the first e-mail used conditional language, suggesting that the e-mails were mere political hyperbole. He relies on *Watts v. United States*, 394 U.S. 705 (1969) (per curiam), in which the Supreme Court held that § 871(a) did not encompass a statement during a public rally that "[i]f they ever make me carry a rifle the first man I want to get in my sights is L.B.J." *Id.* at 706. The Court concluded that the statute requires

the government to prove that the statement at issue is a "true threat," rather than mere "political hyperbole." *Id.* at 708 (internal quotation omitted). Given the context, the conditional nature of the statement, and the fact that the crowd laughed after the statement was made, the Court determined that the statement was only "a kind of very crude offensive method of stating a political opposition to the President." *Id.* (internal quotation omitted). The Court noted that First Amendment considerations counseled against imposing criminal liability for such statements. *Id.* at 707-08.

*Watts* demonstrates the limits of § 871(a), but no particular formulation of words is required to state a true treat. This court has noted that "a person may not escape prosecution for uttering threatening language merely by combining the threatening language with issues of public concern," and that "[a] threat may be considered a 'true threat' even if it is premised on a contingency." *United States v. Bellrichard*, 994 F.2d 1318, 1322 (8th Cir. 1993). "That correspondence containing threatening language is phrased in outrageous terms does not make the correspondence any less threatening." *Id.* The factual basis in this case lacks some of the mitigating circumstances present in *Watts*, and in light of the record as a whole and our limited standard of review, we conclude that there was no obvious error.

The judgment of the district court is affirmed.

_____